Jason A. McNeill (9711)
  mcneill@mvmlegal.com
Brian E. Lahti (16298)
  lahti@mvmlegal.com
**MCNEILL|VON MAACK**
175 South Main Street, Suite 1050
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Tyler G. Newby (CA Bar No. 205790) (admitted *pro hac vice*)
  tnewby@fenwick.com
Sapna S. Mehta (CA Bar No. 288238) (admitted *pro hac vice*)
  smehta@fenwick.com
**FENWICK & WEST LLP**
555 California Street
San Francisco, CA 94104
Telephone: 415.875.2495

Attorneys for Defendant, Click Sales Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **XMISSION, L.C., a Utah company,** | **CLICK SALES INC.'S REPLY IN SUPPORT OF MOTION TO STAY PENDING APPEAL** |
| **Plaintiff,** | |
| **v.** | |
| **CLICK SALES INC., a Delaware Corporation,** | **Case No.:  2:17-cv-01287-DAK-PMW** |
| **Defendant.** | **Honorable Dale A. Kimball** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

ARGUMENT ............................................................................................................................1

    I.      XMISSION FAILED TO REBUT THE IRREPARABLE HARM
           CLICK SALES FACES ABSENT STAY OF THE INJUNCTION. ......................1

    II.     XMISSION ARTICULATED NO HARM THAT IT WILL SUFFER
           FROM A STAY, WHICH WILL PRESERVE STATUS QUO
           PENDING APPEAL OF THE INJUNCTION. .......................................................4

    III.    THE PUBLIC INTEREST FAVORS A STAY. ......................................................5

    IV.    CLICK SALES' APPEAL PRESENTS SERIOUS LEGAL
           QUESTIONS WARRANTING A STAY. ...............................................................6

    V.      NO BOND IS NECESSARY TO PRESERVE BOTH PARTIES'
           RIGHTS. ...............................................................................................................8

CONCLUSION.........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ...................................................................7

*Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*,
   565 F.3d 769 (10th Cir. 2009) .................................................................3

*ClearOne Communications, Inc. v. Chiang*,
   670 F. Supp. 2d 1248 (D. Utah 2009)......................................................3

*DTC Energy Grp., Inc. v. Hirschfeld*,
   912 F.3d 1263 (10th Cir. 2018) ...............................................................4

*F.T.C. v. Mainstream Mktg. Servs., Inc.*,
   345 F.3d 850 (10th Cir. 2003) .................................................................2

*Pierce v. Shorty Small's of Branson Inc.*,
   137 F.3d 1190 (10th Cir. 1998) ...............................................................7

*Thiry v. Carlson*,
   891 F. Supp. 563 (D. Kan. 1995)..............................................................8

STATUTES

CAN-SPAM Act ............................................................................... *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 62 .....................................................................................8

Fed. R. Civ. P. 65 ..................................................................................3, 4

## INTRODUCTION

XMission articulates no basis for the Court to deny a stay.  XMission does not seriously dispute that Click Sales faces irreparable harm to its speech rights and from its risk of potential contempt sanctions absent a stay.  And XMission continues to rely on generalized "harm" from the expense of email filtering efforts it has conducted since its inception as a business, rather than proffer any unique harm a brief stay would cause.  Given this balance of harms, a stay should issue because the appeal presents significant legal questions of first impression in the Tenth Circuit.  XMission's summary argument that this Court has already carefully rendered its *own* decision in the injunction order does not make appellate review of these questions any less significant.

In short, XMission's opposition assumed that because the Court granted an injunction, it should reject a stay.  But that misses the point.  The analysis of a stay has significant differences from the injunction analysis.  Here, each of the factors favor a stay, and the Court should grant one to permit the Tenth Circuit time to afford Click Sales any relief it determines is appropriate.

## ARGUMENT

**I.     XMISSION FAILED TO REBUT THE IRREPARABLE HARM CLICK SALES FACES ABSENT STAY OF THE INJUNCTION.**

Click Sales established that it will suffer irreparable harm, as the injunction prohibits it from communicating with persons who expressly want to receive commercial communications from Click Sales and its affiliates.  Additionally, the injunction subjects Click Sales to potential contempt sanctions for third-party conduct beyond its control.  (Dkt. 73 ("Motion") at 3-7.) XMission failed to rebut either harm.

XMission's primary argument is that the Court limited its injunction to require only that Click Sales comply with the CAN-SPAM Act, which, by XMission's logic, would permit Click

Sales and its affiliates to send commercial emails to XMission customers who want to receive them.  This glosses over the actual discussion in the Court's order, which goes beyond the statute to prohibit Click Sales from communicating with users who *choose* to receive emails.  The CAN-SPAM Act's opt-out provision applies to individual email addresses, not XMission's entire domain.  15 U.S.C. § 7704(a)(3)(A).  And even when a user opts-out, he retains the ability to opt back in.  § 7704(a)(4)(B).  Click Sales' emails comply with these provisions, and Click Sales requires all third-party users of its platform to comply.

XMission relies on its own terms of service to argue that its customers have each delegated their right to opt in or out to XMission.  But XMission failed to show that any of the customers at issue effectively assented to this delegation.  XMission's own brief tends to show the contrary: that its customers continue to affirmatively opt-in to certain emails that XMission would otherwise wish to suppress.  The two emails purportedly sent from @clickbank.com attached to XMission's opposition reflect that the recipient "received th[e] email because you are subscribed to Marketing Information from ClickBank" and that the recipient may "[u]pdate your email preferences to choose the types of emails you receive" or "[u]nsubscribe from all future emails."  (*See* Dkt. 80-1 (Opp., Ex. A).)  Thus, although these emails would comply with CAN-SPAM and the language of the injunction, XMission's interpretation of the injunction order exposes Click Sales to a potential contempt motion.

Even if the terms of service effectively delegated to XMission the ability to opt-out on behalf of some customers, XMission cannot alter a federal statute through its terms of service.[1]

---

[1] The Tenth Circuit's decision in *Mainstream Marketing* did not sanction such an interference with user choice, as XMission contends.  To the contrary, it emphasized that the national do-not-call list under review "is of an opt-in nature," meaning it "is not invoked until the homeowner makes a private decision to invoke it."  *F.T.C. v. Mainstream Mktg. Servs., Inc*., 345 F.3d 850, 860 (10th Cir. 2003).

The CAN-SPAM Act does not require an automated "one-click" unsubscribe option for an entire domain. *See* § 7704(a)(3)(A), (i). XMission presented no evidence—and failed to plead—that any of Click Sales' own emails violated the CAN-SPAM Act in any way.

Second, the Court should reject XMission's attempt to minimize Click Sales' risk of contempt sanctions for third-party conduct beyond Click Sales' control. The injunction's instruction that Click Sales and third-party users of its platform comply with the CAN-SPAM Act does not "describe in reasonable detail" the act(s) restrained. *See* Fed. R. Civ. P. 65(d)(1)(C). Directing a party to comply with a statute is insufficiently specific under Rule 65 (Motion at 5-6); XMission neither addresses this authority nor offers any authority in support of its contrary argument.[2]

Nor does the injunction specify what Click Sales must do with respect to third-parties that Click Sales does not control, beyond what it already does by directing them to comply with the statute. XMission concedes that Click Sales lacks technical control over third-party users. It proposes that, to comply with the injunction, Click Sales could develop and build an entirely new e-commerce platform *before* the Court adjudicates XMission's claims. (Dkt. 80 ("Opp.") at 5.) But this suggestion in fact proves Click Sales' point. First, the Court declined to order Click Sales to change its entire systems on a preliminary basis. And it had good reason: such a substantial and onerous change to Click Sales' business operations would be inappropriate at this preliminary stage of the case. The Tenth Circuit disfavors injunctions that require the defendant to take some affirmative action before trial because they can cause "injury that would not have occurred but for the court's intervention." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*,

---

[2] In *ClearOne Communications, Inc. v. Chiang*, the sole case XMission cites, the injunction did not direct compliance with a statute like the Court's injunction here. 670 F. Supp. 2d 1248, 1252 (D. Utah 2009) (restricting specific uses of identified intellectual property).

565 F.3d 769, 776 (10th Cir. 2009) (internal quotation marks and citations omitted).  That is

particularly true here, since the Court required no security from XMission for "the costs and

damages sustained by" Click Sales, the wrongfully restrained party.[3]  *See* Fed. R. Civ. P. 65(c).

There is thus no serious dispute that Click Sales faces irreparable harm absent a stay of

the Court's injunction.

## II.  XMISSION ARTICULATED NO HARM THAT IT WILL SUFFER FROM A STAY, WHICH WILL PRESERVE STATUS QUO PENDING APPEAL OF THE INJUNCTION.

XMission did not contest the well-established authority holding that generalized harms

not specifically related to the enjoined conduct are irrelevant to consideration of a stay.  (Motion

at 8 (collecting cases)); *see also DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269-70

(10th Cir. 2018) (the "limited purpose" of a preliminary injunction is to protect against

"irreparable injury that will surely result without [its] issuance" before trial).

Instead, XMission claims that it will suffer "unique harm" or "particularly tricky"

circumstances caused by emails sent by Click Sales, separate from other emails it receives.  But

no evidence supports these attorney statements in the brief.  XMission claims it will need to

"identify[] and address[]" Click Sales emails.  (Opp. at 6.)  But that is not a unique harm; it is the

filtering that XMission claims to perform for all emails.  (*E.g.*, Declaration of Peter L. Ashdown

(Dkt. 36) ¶¶ 22-25.)  XMission concedes that—with or without an injunction—it must maintain

its email filtering technology during the pendency of the appeal.  (Opp. at 6.)  XMission's

---

[3]  In its opposition, XMission seriously mischaracterized the cost to Click Sales to change its platform.  It would take Click Sales a minimum of $49,000 simply to come up with *a plan* for that change.  (Dkt. 62-6 ¶ 7.)  This does not include the significant and on-going costs and investment of time to build and maintain it, which would be exponentially greater.

additional "review" is for its own litigation efforts (*id.* ¶ 25) and does not constitute unique harm from the stay.

The emails XMission allegedly received after the Court entered the injunction do not warrant denial of the stay.  First, Click Sales has already suppressed XMission's domain, and would work voluntarily with XMission to ensure that suppression is effective during the stay, provided those issues are raised with Click Sales directly.  While XMission claimed that it received "over 400" emails after the injunction, it submitted only three.  And only two of these reflect the @clickbank.com domain after the date of the Court's injunction.[4]  In both, XMission redacted the recipient email address.  It also did not respond to Click Sales' inquiry about them, preventing Click Sales from investigating their authenticity or addressing any compliance issue.  *See* Exhibit 1.  In any event, as discussed above, the emails reflect that the recipients subscribed to receive them.  The Court should reject XMission's proffer of harm based on this minimal and questionable showing.

## III.   THE PUBLIC INTEREST FAVORS A STAY.

XMission summarily concludes that the stay will not further public interest because the Court already issued the injunction over Click Sales' objections.  In doing so, it continues to gloss over the Court's requirements that go beyond the CAN-SPAM Act to prohibit protected speech.  (*See* Motion at 4-5.)  Nor does XMission address the public's interest in protecting consumer choice, codified in the statute.  *See* § 7704(a)(4)(B).  XMission maintains that the Court should prohibit emails that XMission's customers affirmatively subscribed to receive, before it fully determines the merits of the alleged CAN-SPAM Act violations.  (*See* Opp., Ex. A.)  But

---

[4]  The third email submitted as Exhibit A reflects that a third-party sent it.  The sender's address is not the @clickbank.com domain and all of the hyperlinks navigate to a third-party website.

XMission's own interests are not synonymous with the public's, and a stay here serves the public interest by protecting Constitutional speech rights and consumer choice.

## IV.    CLICK SALES' APPEAL PRESENTS SERIOUS LEGAL QUESTIONS WARRANTING A STAY.

XMission argues that a stay is not warranted because the Court already decided the issues presented.  (Opp. at 8.)  On that view, a party appealing an injunction could never obtain a stay pending appeal.  But the Court's analysis of whether to stay in fact differs from its preliminary injunction analysis.  (Motion at 2-3.)  Indeed, XMission concedes that when the balance of harms favors a stay—as it does here—a movant need only show that the appeal presents a serious legal question warranting appellate consideration, not a likelihood of success on the merits.  Click Sales not only made that showing twice over, but also showed that it is likely to succeed on appeal.  Thus, under either analysis, this factor supports granting the stay.

Click Sales did not "initiate" the alleged third-party emails under the CAN-SPAM Act. *See* §§ 7702(9), 7702(12), 7706(g)(2).  XMission does not contest that the Tenth Circuit has not construed the applicable definitions in the statute.  And other courts that have interpreted these provisions have disagreed with this Court's reading, and refused to hold parties liable for commercial email messages they did not send.  (*See* Motion at 11.)  Regardless of the careful consideration this Court gave the issue before issuing its decision, it remains a disputed issue and question of first impression for the Tenth Circuit.  This is a substantial legal question warranting review, and XMission cited no authority to the contrary beyond its own say-so and the injunction itself.

Similarly, XMission failed to address seriously the landmark Supreme Court decisions holding that interactions with a plaintiff or third-party known to have forum connections do not, without more, justify exercise of personal jurisdiction over a non-resident defendant.  XMission

attempts to distinguish those cases on the basis that they involve the defendants' "physical conduct" outside the forum. (Opp. at 9.) But that is not a point of distinction: here Click Sales' conduct took place outside the forum, just as the defendants' in *Walden* and *Bristol Myers*, and XMission sued based on in-forum effects.

Regardless, courts have rejected XMission's suggestion that *Walden* and *Bristol Myers* apply only to "physical conduct" and not emails. In *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 802 (7th Cir. 2014), the Seventh Circuit reversed the district court's exercise of jurisdiction based on emails sent into the forum. It rejected as a basis for jurisdiction the fact that the defendant knew the plaintiff was an Indiana company and could thus "foresee that its misleading emails and sales would harm [the plaintiff] in Indiana," observing that "*Walden* . . . shows the error of this approach." *Id*. By contrast, the sole case XMission cites to support its position predates the Supreme Court's decisions, calling its continuing validity into question. This personal jurisdiction issue, too, is a substantial legal question warranting further consideration.

Finally, XMission offered no authority supporting its argument that its claims involving emails allegedly sent by Click Sales and its claims involving third-party emails "are not separate" under the doctrine of pendent personal jurisdiction. (Opp. at 8.) Exercise of pendent personal jurisdiction requires a common nucleus of operative *fact*. XMission's claims arise out of at least two disparate sets of transactions: emails sent by Click Sales (though these emails were not alleged in the complaint), and emails sent by third parties without Click Sales' approval or advance knowledge. Click Sales provided evidence on this point when it challenged personal jurisdiction, and the Court may not simply base its assertion of jurisdiction on XMission's *allegations* to the contrary. *See Pierce v. Shorty Small's of Branson Inc*., 137 F.3d 1190, 1192

(10th Cir. 1998).  That these different operative facts raise related legal questions under the CAN-SPAM Act, such as when a defendant "initiates" an email, does not give rise to pendent personal jurisdiction.  There is thus a substantial question as to whether this Court had a basis to exercise personal jurisdiction over Click Sales for XMission's claims based on third-party emails.

## V.      NO BOND IS NECESSARY TO PRESERVE BOTH PARTIES' RIGHTS.

A bond is not required during the stay, which will simply maintain status quo for a brief period to allow Click Sales to defend its rights on appeal.  Indeed, XMission asserts in its brief that the Court's injunction only imposes compliance with the CAN-SPAM Act; with or without an injunction, the statutory requirements of the CAN-SPAM Act still apply.  And XMission may still pursue its claims for relief on the merits.  XMission thus demonstrates no "bond or other terms" are necessary to secure its rights.

Even if a bond were warranted, the bond terms must be specific to any harm suffered by XMission while the injunction is stayed pending appeal.  *See* Fed. R. Civ. P. 62(d).  XMission proffered no evidence of such harm or its approximate cost.  Instead, it requested the Court require Click Sales to bond the *entire amount* of XMission's claim for statutory damages.  That is not the appropriate measure to measure XMission's harm or to secure its rights during the period of the appeal.  *See Thiry v. Carlson*, 891 F. Supp. 563, 568 (D. Kan. 1995) (rejecting bond request for a purported cost increase during pendency of appeal because it was "speculative" to attribute that cost "solely to the appeal").  XMission's exorbitant request for a $1,000,000 bond far exceeds XMission's *total annual* costs for dealing with *all* email filtering issues from *all* sources.  Ashdown Decl. ¶ 19.  The Court should reject XMission's overreaching and deny its request for a bond.

8

## CONCLUSION

Each of the four factors relevant to determining whether to suspend an injunction pending appeal weighs in favor of a stay.  Click Sales thus requests that the Court stay the preliminary injunction it entered pending disposition of Click Sales' appeal to the Tenth Circuit.


Dated: June 4, 2019                                   Respectfully submitted,

                                                      **MCNEILL | VON MAACK**


                                                      By:   */s/ Brian E. Lahti*_____
                                                            Jason A. McNeill
                                                            Brian E. Lahti

                                                      **Fenwick & West LLP**
                                                      Tyler G. Newby (CA Bar No. 205790)
                                                      Admitted *pro hac vice*
                                                      Sapna S. Mehta (CA Bar No. 288238)
                                                      Admitted *pro hac vice*
                                                      555 California Street
                                                      San Francisco, CA 94104
                                                      Telephone: 415.875.2495

                                                      *Attorneys for Defendant Click Sales Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK, 175 South

Main Street, Suite 1050, Salt Lake City, Utah 84111, and that pursuant to Rule 5(b) of the

Federal Rules of Civil Procedure, a true and correct copy of the foregoing **Defendant Click**

**Sales Inc.'s Reply in Support of Motion to Stay Injunction Pending Appeal** was delivered to

the following this 4th day of June, 2019, via submission of the CM/ECF System:

> Jordan K. Cameron
> DURHAM JONES PINEGAR PC
> 3301 N. Thanksgiving Way, Suite 300
> Lehi, Utah 84043

*/s/ Brian E. Lahti*
Brian E. Lahti
