# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **XMISSION, L.C.,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**CLICK SALES, INC.,**<br><br>    **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17CV1287DAK<br><br>Judge Dale A. Kimball |

  This matter is before the court on Defendant Click Sales, Inc.'s Motion to Stay Pending Appeal. Plaintiff XMission L.C. has opposed the motion, and Click Sales has filed a reply in support of its motion. Accordingly, the motion is fully briefed. The court concludes that a hearing would not aid in its determination of the motion. Therefore, the court issues the following memorandum decision and order based on the parties' briefing and the law and facts relevant to the pending motion.

  On April 11, 2019, the court issues a Memorandum Decision and Preliminary Injunction Order, denying Click Slakes' FRCP 12(b)(2) motion to dismiss for lack of personal jurisdiction and granting XMission's motion for preliminary injunction based on Click Sales' alleged violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), 15 U.S.C. §§ 7701-7713. The court's preliminary injunction order provides that Click Sales and all persons acting in concert or participation with it, including its affiliates, are enjoined from sending any commercial emails to XMission and/or any of its customers in violation of the CAN-SPAM Act. Click Sales filed an interlocutory appeal of the court's

Memorandum Decision and Preliminary Injunction Order.

The Tenth Circuit has interlocutory jurisdiction to review this court's granting of XMission's motion for preliminary injunction. 28 U.S.C. § 1292(a)(1); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1147 (10th Cir. 2011). However, Click Sales will need to establish pendent appellate jurisdiction for the Tenth Circuit to review this court's decision on its motion to dismiss for lack of personal jurisdiction. Orders denying motions to dismiss typically are not immediately appealable, but the court of appeals may review the court's otherwise nonappealable decision on Click Sales' motion to dismiss under pendent appellate jurisdiction if it is "inextricably intertwined with the appealable decision," or if its "review is necessary to ensure meaningful review of the appealable one." *Stewart v. Oklahoma*, 292 F.3d 1257, 1260 (10th Cir. 2002). Click Sales' motion to stay only addresses a stay of the court's preliminary injunction and does not address whether the Tenth Circuit has pendent appellate jurisdiction over the motion to dismiss.

Rule 62(c) of the Federal Rules of Civil Procedure provides that "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Rule 8(a)(1) of the Federal Rules of Appellate Procedure provides that a party must ordinarily first move in the district court to obtain a stay of the judgment or order of a district court pending appeal. Fed. R. App. P. 8(a)(1).

The purpose of a stay is to preserve the status quo pending appeal. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996). In the briefing on XMission's motion for preliminary injunction, Click Sales never argued that XMission's preliminary injunction would

alter the status quo.[1] In addition, the status quo would necessarily be Click Sales complying with the CAN-SPAM Act, which is all that the preliminary injunction requires.

The court considers the following four factors when considering a motion to stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "With respect to the four stay factors, where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed.'" *F.T.C. v. Mainstream Marketing Services, Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (citations omitted). If Click Sales meets its burden of demonstrating the other requirements for a stay pending appeal, it will satisfy the likelihood of success on appeal element if it shows "'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'" *McClendon*, 79 F.3d at 1020 (quoting *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir.), *cert. denied*, 516 U.S. 974, 116 S. Ct. 474, 133 L. Ed. 2d 403 (1995).

The court's Memorandum Decision and Preliminary Injunction Order already weighed and balanced the harms involved in issuing its preliminary injunction. Xmission demonstrated existing clear and irreparable harms if an injunction is not in place. Click Sales claims that it will

---

[1] Rather, Click Sales contended that the preliminary injunction was a disfavored mandatory injunction requiring it to act. However, the court concluded that the preliminary injunction was not a mandatory injunction because it merely required Click Sales to comply with the CAN-SPAM Act.

be irreparably harmed by the injunction because it violates its First Amendment rights to send commercial emails to XMIssion's customers. However, Click Sales does not have a First Amendment right to send emails in violation of the CAN-SPAM Act. Part of the alleged violations of the CAN-SPAM Act is Click Sales persistence in sending commercial emails to customers who have opted out of all emails from Click Sales. In a new argument raised first in the motion to stay, Click Sales now asserts that XMission's opt-out requests do not comply with the CAN-SPAM Act. However, the court issued the injunction based on the evidence before the court. The evidence before the court was that XMission has an agreement with its customers to provide opt-out requests for the customers. XMission has a system for sending those opt-out requests and it sent such opt-out requests to Click Sales. Nonetheless, Click Sales persisted in sending emails in violation of the CAN-SPAM Act.

Although Click Sales raises its new argument that XMission cannot opt-out for its customers, it provides no law supporting the new argument. The case of *F.T.C. v. Mainstream Marketing Servs.*, 345 F.3d 850 (10th Cir. 2003), actually supports Xmission's position, not Click Sales'. XMission's customers have the right to give XMission the power to opt-out on their behalf. By entering into an agreement with XMission to suppress spam emails, XMission's customers are exercising their choice. Moreover, none of the emails in question were sent to customers who elected not to participate in XMission's suppression services. Therefore, the preliminary injunction does not violate Click Sales' First Amendment rights.

Click Sales also claims that the court's preliminary injunction causes it harm because the order tells it to comply with the CAN-SPAM Act but does not specify in reasonable detail how it can comply. However, the court's decision specifically explains the ways in which Click Sales and its affiliates are alleged to be violating the CAN-SPAM Act. Click Sales cannot focus on the


language of one sentence when the court addressed the issue in several pages of analysis. Moreover, Click Sales' initial briefing on XMission's motion for preliminary injunction did not argue that it did not know how to comply with the requested injunction. Rather, it claims that it would need to modify its business operations and develop systems it does not currently have, which would cost at least $49,000. Such costs are not irreparable harm, especially given that Click Sales should have had these operations and systems in place to comply with the CAN-SPAM Act in the first place. The provisions of the CAN-SPAM Act are clear, XMission's allegations of the alleged violations are clear, and this court's preliminary injunction order is clear. Click Sales' desire not to comply is not the same as not knowing how to comply. Accordingly, the court concludes that Click Sales has failed to meet its burden of demonstrating irreparable harm in the absence of a stay.

The courts Memorandum Decision and Order addresses the irreparable harm XMission faces in the absence of an injunction. Given Click Sales' failure to demonstrate irreparable harm in support of its motion to stay, the court concludes that the balance of harms weighs in favor of XMission. In addition, the public interest is not harmed in the absence of a stay of the preliminary injunction. Click Sales has not demonstrated that it and/or the public has a constitutional right to send emails in violation of the CAN-SPAM Act. Because Click Sales has failed to meet any of the harm factors, the court denies Click Sales' request for a stay of the court's preliminary injunction pending appeal.[2]

---

[2] The court, therefore, does not address the allegedly "serious legal questions" Click Sales claims are at issue on appeal. However, as stated above, Click Sales has not attempted to demonstrate that there is pendent appellate jurisdiction over the personal jurisdiction issues. And, Click Sales mischaracterizes the issues this court addressed and the court's findings and conclusions on the issues the court actually addressed. Such a strategy is unlikely to be successful on appeal.

Based on the above reasoning, Click Sales' Motion to Stay Pending Appeal [Docket No. 73] is DENIED.

DATED this 9th day of July, 2019.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge